

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

December 20, 2016

The Honorable Charles Perry
Chair, Committee on Agriculture,
   Water & Rural Affairs
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2548

Opinion No. KP-0123

Re: Whether adoption of the American Bar Association's Model Rule of Professional Conduct 8.4(g) would constitute a violation of an attorney's statutory or constitutional rights (RQ-0128-KP)

Dear Senator Perry:

You request an opinion concerning whether this State's adoption of the American Bar Association's new Model Ethics Rule 8.4(g), regarding attorney misconduct due to discrimination, "would constitute a violation of an individual attorney's rights under any applicable statute or constitutional provision."[1]

The American Bar Association ("ABA") is a voluntary organization that serves the legal profession. One of the many services it performs is to propose rules that may "serve as models for the ethics rules" of individual states.[2] The ABA House of Delegates originally adopted the Model Rules of Professional Conduct ("Model Rules") in 1983, and it has amended the Model Rules numerous times since. MODEL RULES OF PROF'L CONDUCT, Preface (AM. BAR ASS'N 2016). All states but one have patterned their rules of professional conduct for attorneys after the Model Rules, but the majority of states have not adopted rules identical to the Model Rules. Instead, states have modified the rules to varying degrees.

In August of 2016, the ABA House of Delegates amended Model Rule 8.4 to add subsection (g), which provides that it is professional misconduct for a lawyer to:

> (g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status

---

[1]Letter from Honorable Charles Perry, Chair, Senate Comm. on Agric., Water & Rural Affairs, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Sept. 19, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]See AM. BAR ASS'N, MODEL RULES OF PROF'L CONDUCT, ABOUT THE MODEL RULES, http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct.html (last visited Dec. 8, 2016).

in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline, or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

*Id.* r. 8.4(g). Two comments relevant to subsection (g) were also added to the Rule:

[3] Discrimination and harassment by lawyers in violation of paragraph (g) undermine confidence in the legal profession and the legal system. Such discrimination includes harmful verbal or physical conduct that manifests bias or prejudice towards others. Harassment includes sexual harassment and derogatory or demeaning verbal or physical conduct. . . .

[4] Conduct related to the practice of law includes representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities in connection with the practice of law. Lawyers may engage in conduct undertaken to promote diversity and inclusion without violating this Rule by, for example, implementing initiatives aimed at recruiting, hiring, retaining and advancing diverse employees or sponsoring diverse law student organizations.

*Id.* r. 8.4(g) cmts. 3–4.

In Texas, the State's Supreme Court regulates the practice of law. TEX. GOV'T CODE § 81.011(c). Government Code section 81.024 authorizes the Court to prepare, propose, and adopt rules "governing the state bar," including rules related to "conduct of the state bar and the discipline of its members." *Id.* § 81.024(a)–(b). Before they are promulgated, however, such rules must be approved by members of the State Bar through a referendum. *Id.* § 81.024(g) ("A rule may not be promulgated unless it has been approved by the members of the state bar in the manner provided by this section."). Upon referendum by members of the State Bar, the Court adopted the Texas Disciplinary Rules of Professional Conduct ("Texas Rules").[3] The Court patterned the Texas Rules after the Model Rules to some extent, but it made a number of modifications with regard to certain specific rules and declined to adopt others altogether.

---

[3]The Texas Rules became effective January 1, 1990, and replaced the Texas Code of Professional Responsibility. TEX. DISCIPLINARY RULES PROF'L CONDUCT preamble, *reprinted in* TEX. GOV'T CODE tit. 2, subtit. G, app. A (Editor's Notes). Over the past twenty-five years, the Texas Supreme Court and the State Bar have conducted five referenda to amend the Rules of Professional Conduct or the Rules of Disciplinary Procedure, and two of those referenda passed. *See* Sunset Advisory Comm'n Staff Report, State Bar of Texas Bd. of Law Exam'rs, 2016–2017, Eighty-fifth Legislature at 15, https://www.sunset.texas.gov (last visited Dec. 8, 2016).

Although the Texas Supreme Court adopts rules rather than the Legislature, the Court has emphasized that its rules should be construed as statutes. *O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 399 (Tex. 1988). A Texas lawyer who fails to conform his or her professional conduct to the Texas Rules commits professional misconduct and may lose his or her license to practice law in this State. *See* TEX. RULES DISCIPLINARY P. R. 1.06(W), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A-1 (defining "professional misconduct"). Relevant to your question, the Texas Supreme Court has not adopted Model Rule 8.4(g), and it is not currently part of the Texas Rules. However, if the State were to adopt Model Rule 8.4(g), its provisions raise serious concerns about the constitutionality of the restrictions it would place on members of the State Bar and the resulting harm to the clients they represent.

## I.      A court would likely conclude that Model Rule 8.4(g) infringes upon the free speech rights of members of the State Bar.

The Framers of the United States Constitution fashioned the constitutional safeguard of free speech to assure the "unfettered interchange of ideas" for bringing about "political and social changes desired by the people." *N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). "All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion"—fall within the full protection of the First Amendment. *Roth v. United States*, 354 U.S. 476, 484 (1957). Contrary to these basic free speech principles, Model Rule 8.4(g) would severely restrict attorneys' ability to engage in meaningful debate on a range of important social and political issues.

While decisions of the United States Supreme Court have concluded that an attorney's free speech rights are circumscribed to some degree in the courtroom during a judicial proceeding and outside the courtroom when speaking about a pending case, Model Rule 8.4(g) extends far beyond the context of a judicial proceeding to restrict speech or conduct in any instance when it is "related to the practice of law." MODEL RULES OF PROF'L CONDUCT r. 8.4(g) (AM. BAR ASS'N 2016); *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991). Comment 4 to Model Rule 8.4(g) addresses the expanse of this phrase by explaining that conduct related to the practice of law includes

> representing clients; interacting with witnesses, coworkers, court personnel, lawyers and others while engaged in the practice of law; operating or managing a law firm or law practice; and participating in bar association, business or social activities in connection with the practice of law.

MODEL RULES OF PROF'L CONDUCT r. 8.4(g) cmt. 4 (AM. BAR ASS'N 2016). Given the broad nature of this rule, a court could apply it to an attorney's participation in a continuing legal education panel discussion, authoring a law review article, or informal conversations at a bar association event.

One commentator has suggested, for example, that at a bar meeting dealing with proposals to curb police excessiveness, a lawyer's statement, "Blue lives [i.e., police] matter, and we should be more concerned about black-on-black crime," could be subject to discipline under Model Rule

8.4(g).[4] In the same way, candid dialogues about illegal immigration, same-sex marriage, or restrictions on bathroom usage will likely involve discussions about national origin, sexual orientation, and gender identity. Model Rule 8.4(g) would subject many participants in such dialogue to discipline, and it will therefore suppress thoughtful and complete exchanges about these complex issues.

While federal and state law provide heightened protection to most of the classes identified in Model Rule 8.4(g), even in those instances, the law does not prohibit discrimination under all circumstances. Instead, a state action distinguishing between people on the basis of national origin, for example, must be "narrowly tailored to serve a compelling government interest." *Richards v. League of United Latin Am. Citizens*, 868 S.W.2d 306, 311 (Tex. 1993). Yet an attorney operating under Model Rule 8.4(g) may feel restricted from taking a legally supportable position due to fear of reprimand for violating the rule. Such restrictions would infringe upon the free speech rights of members of the State Bar, and a court would likely conclude that Model Rule 8.4(g) is unconstitutional.

**II.     A court would likely conclude that Model Rule 8.4(g) infringes upon an attorney's First Amendment right to free exercise of religion.**

Model Rule 8.4(g) could also be applied to restrict an attorney's religious liberty and prohibit an attorney from zealously representing faith-based groups. For example, in the same-sex marriage context, the U.S. Supreme Court has emphasized that "religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2607 (2015). The Court has further encouraged "an open and searching debate" on the issue. *Id.* However, operation of Model Rule 8.4(g) would stifle such a debate within the legal community for fear of disciplinary reprimand and would likely result in some attorneys declining to represent clients involved in this issue for fear of disciplinary action. If an individual takes an action based on a sincerely-held religious belief and is sued for doing so, an attorney may be unwilling to represent that client in court for fear of being accused of discrimination under the rule. "[D]isciplinary rules governing the legal profession cannot punish activity protected by the First Amendment." *Gentile*, 501 U.S. at 1054. Given that Model Rule 8.4(g) attempts to do so, a court would likely conclude that it is unconstitutional.

**III.    A court would likely conclude that Model Rule 8.4(g) infringes upon an attorney's right to freedom of association.**

"[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000). Contrary to this constitutionally protected right, however, Model Rule 8.4(g)

---

[4]Ronald D. Rotunda, *The ABA Decision to Control What Lawyers Say: Supporting "Diversity" But Not Diversity of Thought*, The Heritage Foundation Legal Memorandum 4 (2016).

could be applied to restrict an attorney's freedom to associate with a number of political, social, or religious legal organizations. The Rule applies to an attorney's participation in "business or social activities in connection with the practice of law." MODEL RULES OF PROF'L CONDUCT r. 8.4(g) cmt. 4 (AM. BAR ASS'N 2016). Many attorneys belong to faith-based legal organizations, such as a Christian Legal Society, a Jewish Legal Society, or a Muslim Legal Society, but Model Rule 8.4(g) could curtail such participation for fear of discipline. In addition, a number of other legal organizations advocate for specific political or social positions on issues related to race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status, or socioeconomic status. Were Texas to adopt Model Rule 8.4(g), it would likely inhibit attorneys' participation in these organizations and could be applied to unduly restrict their freedom of association.

## IV. Because Model Rule 8.4(g) attempts to prohibit constitutionally protected activities, a court would likely conclude it is overbroad.

An overbroad statute "sweeps within its scope a wide range of both protected and non-protected expressive activity." *Hobbs v. Thompson*, 448 F.2d 456, 460 (5th Cir. 1971). A court will strike down a statute as unconstitutional if it is so overbroad as to chill individual thought and expression such that it would effectively punish the expression of particular views. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 583 (1998). In the First Amendment context, a court will invalidate a statute as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quotation marks omitted). A law is not overbroad merely because one can think of a single impermissible application. *See New York v. Ferber*, 458 U.S. 747, 771–73 (1982). A finding of substantial overbreadth requires a court "to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 11 (1988) (quotation marks omitted).

Although courts infrequently invalidate a statute for overbreadth, Model Rule 8.4(g) is a circumstance where a court would be likely to do so. *See Finley*, 524 U.S. at 580 ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly[.]" (quotation marks omitted)). Like those examples discussed above, numerous scenarios exist of how the rule could be applied to significantly infringe on the First Amendment rights of all members of the State Bar. A statute "found to be overbroad may not be enforced at all, even against speech that could constitutionally be prohibited by a more narrowly drawn statute." *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 435 (1998). Because Model Rule 8.4(g) substantially restricts constitutionally permissible speech and the free exercise of religion, a court would likely conclude it is overbroad and therefore unenforceable.

## V. As applied to specific circumstances, a court would likely also conclude that Model Rule 8.4(g) is void for vagueness.

A statute is void for vagueness when it "prohibits conduct that is not sufficiently defined." *Id.* at 437. A vague statute offends due process in two ways: (1) by failing to give fair notice of what conduct may be punished; and (2) inviting "arbitrary and discriminatory enforcement by

failing to establish guidelines for those charged with enforcing the law." *Id.* "To survive a vagueness challenge, a statute need not spell out with perfect precision what conduct it forbids." *Id.* But it must explain the prohibited conduct "in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 579 (1973). When analyzing whether a disciplinary rule directed solely at lawyers is vague, courts will "ask whether the ordinary lawyer, with the benefit of guidance provided by case law, court rules and the lore of the profession, could understand and comply with it." *Benton*, 980 S.W.2d at 437 (quotation marks omitted).

When a "statute's language is capable of reaching protected speech or otherwise threatens to inhibit the exercise of constitutional rights, a stricter vagueness standard applies than when the statute regulates unprotected conduct." *Id.* at 438. Model Rule 8.4(g) lacks clear meaning and is capable of infringing upon multiple constitutionally protected rights, and it is therefore likely to be found vague. In particular, the phrase "conduct related to the practice of law," while defined to some extent by the comment, still lacks sufficient specificity to understand what conduct is included and therefore "has the potential to chill some protected expression" by not defining the prohibited conduct with clarity. *Id.*; MODEL RULES OF PROF'L CONDUCT r. 8.4(g) (AM. BAR ASS'N 2016). Also, the rule prohibits "discrimination" without clarifying whether it is limited to unlawful discrimination or extends to otherwise lawful conduct. It prohibits "harassment" without a clear definition to determine what conduct is or is not harassing. And it specifically protects "legitimate advice or advocacy consistent with these Rules" but does not provide any standard by which to determine what advice is or is not legitimate. MODEL RULES OF PROF'L CONDUCT r. 8.4(g) (AM. BAR ASS'N 2016). Each of these unclear terms leave Model Rule 8.4(g) open to invalidation on vagueness grounds as applied to specific circumstances.

### VI.     The Texas Rules of Disciplinary Conduct sufficiently address attorney misconduct to prohibit unlawful discrimination.

Multiple aspects of Model Rule 8.4(g) present serious constitutional concerns that would likely result in its invalidation by a court. The Texas Disciplinary Rules of Professional Conduct, on the other hand, already address issues of attorney discrimination through narrower language that provides better clarification about the conduct prescribed. Texas Disciplinary Rule of Professional Conduct 5.08 provides:

> (a) A lawyer shall not willfully, in connection with an adjudicatory proceeding, except as provided in paragraph (b), manifest, by words or conduct, bias or prejudice based on race, color, national origin, religion, disability, age, sex, or sexual orientation towards any person involved in that proceeding in any capacity.

> (b) Paragraph (a) does not apply to a lawyer's decision whether to represent a particular person in connection with an adjudicatory proceeding, nor to the process of jury selection, nor to communications protected as "confidential information" under these Rules. See Rule 1.05(a), (b). It also does not preclude

> advocacy in connection with an adjudicatory proceeding involving any of the factors set out in paragraph (a) if that advocacy:
>
> > (i)  is necessary in order to address any substantive or procedural issues raised in the proceeding; and
> >
> > (ii) is conducted in conformity with applicable rulings and orders of a tribunal and applicable rules of practice and procedure.

TEX. DISCIPLINARY R. PROF'L CONDUCT R. 5.08 ("Prohibited Discriminatory Activities"). Model Rule 8.4(g) is therefore unnecessary to protect against prohibited discrimination in this State, and were it to be adopted, a court would likely invalidate it as unconstitutional.

## S U M M A R Y

A court would likely conclude that the American Bar Association's Model Rule of Professional Conduct 8.4(g), if adopted in Texas, would unconstitutionally restrict freedom of speech, free exercise of religion, and freedom of association for members of the State Bar. In addition, a court would likely conclude that it was overbroad and void for vagueness.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee